UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TUMARBEKOV MADIYAR
(A-Number: 241-135-118),

Petitioner,

v.

KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,

Respondents.

No. 1:26-cv-02989-KES-FJS (HC)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND REQUIRING IMMEDIATE RELEASE

Doc. 1

Petitioner Tumarbekov Madiyar is an immigration detainee proceeding pro se with a petition for writ of habeas corpus and motion for temporary restraining order. Docs. 1, 11. For the reasons explained below, the petition for writ of habeas corpus is granted.

**I. Background**

Petitioner is a citizen of Kazakhstan who was detained shortly after he entered the United States on December 30, 2024. Doc. 9-1, Mears Decl. at ¶¶ 7–8. He has remained detained since that date. *See id.* ¶ 23. On October 28, 2025, an immigration judge ordered him removed from the United States but granted withholding of removal to Kazakhstan. *Id.* ¶ 14. Both parties waived appeal of that decision, *see id.*, so it became final thirty days later, on November 27, 2025, *see* 8 U.S.C. § 1101(a)(47)(B)(ii); 8 C.F.R. § 1003.38(b).

On April 21, 2026, petitioner filed a petition for writ of habeas corpus, challenging his detention under the framework in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* Doc. 1. Respondents filed a response to the petition, in which they argue that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future because they are seeking to remove petitioner to two third countries, Uzbekistan and Moldova. *See* Doc. 9. Subsequently, on June 22, 2026, petitioner filed a motion for temporary restraining order, requesting that the Court bar his removal to a third country. *See* Doc. 11. Petitioner alleges that respondents had not previously informed him that they intended to remove him to Moldova. *See id.* The Court construed the motion for temporary restraining order as raising a challenge to his removal under the ICE policy examined in this Court's prior order, *Viengkhone S. v. Albarran*, 817 F. Supp. 3d 901, 907 (E.D. Cal. 2025). *See* Doc. 12. Respondents filed a response to the motion for temporary restraining order on June 29, 2026. Doc. 13.

## II. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Discussion

### a. *Zadvydas* Claim

Relying on *Zadvydas v. Davis*, 533 U.S. 678 (2001), petitioner argues that his detention is no longer authorized by 8 U.S.C. § 1231(a)(6). *See* Doc 1. In *Zadvydas*, the Supreme Court

recognized that 8 U.S.C. § 1231 would pose a "serious constitutional problem" if it were construed to "permit[] an indefinite . . . deprivation of human liberty[.]" *Zadvydas*, 533 U.S. at 690–92. The Court therefore read an implicit constitutional limitation into 8 U.S.C. § 1231: If, six months after being ordered removed, an immigration detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Once it has been determined that "there is no significant likelihood of removal in the reasonably foreseeable future[,]" then the government must release the noncitizen. *Id.*

Petitioner has been detained for nearly eight months since his removal order became final. *See* Doc. 1 at ¶ 14; 8 U.S.C. § 1101(a)(47)(B)(ii); 8 C.F.R. § 1003.38(b). An immigration judge found that petitioner faced a clear probability of persecution in Kazakhstan and granted withholding of removal. *See* Doc. 9-3; *Cardoza-Fonseca v. I.N.S.*, 767 F.2d 1448, 1452 (9th Cir. 1985) (discussing "clear probability" standard for withholding of removal), *aff'd sub nom. I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421 (1987). ICE therefore cannot remove petitioner to Kazakhstan. *See* 8 U.S.C. § 1231(b)(3)(A).

Respondents assert that ICE is attempting to remove petitioner to several third countries, including Uzbekistan and Moldova. *See* Doc. 9. The declaration of deportation officer Travis Mears states: "Uzbekistan remains willing to accept Petitioner[,] and ICE has a standing offer to release Petitioner if he agrees to personally purchase a flight to Uzbekistan." Doc. 9-1, Mears Decl. at ¶ 19. "Under current policy, Petitioner must agree to purchase his own ticket to be removed to Uzbekistan." *Id.* "So far, Petitioner has declined that option, which ICE considers an obstruction of the removal process." *Id.* Petitioner states: "I told ICE officers that I do not believe Uzbekistan is a safe country for me." Doc. 11 at 2. "Uzbekistan and Kazakhstan have close regional ties and a visa-free regime." *Id.* "Because of this, I fear [that if] I am sent to Uzbekistan, I could be exposed to the same dangers from which the Immigration Court protected me." *Id.*

ICE also began the process of seeking to remove petitioner to Moldova on March 24, 2026. Doc. 9-1, Mears Decl. at ¶ 20. According to the declaration of deportation officer Travis

Mears, "[i]t typically takes three (3) months to get third country removal approval to Moldova." *Id.* ¶ 21. It has now been over four months since ICE began the process of seeking petitioner's removal to Moldova, and respondents have provided no update as to whether they have received approval. Petitioner filed a notice which states: "I fear that if I am removed to Moldova, I could be transferred, deported, or otherwise returned to Kazakhstan." Doc. 14 at 2. "Kazakhstan and Moldova maintain diplomatic relations and both participate in the Commonwealth of Independent States (CIS), which provides a framework for cooperation between member states in various governmental matters." *Id.* "These regional ties increase my fear that I could ultimately be transferred or returned to Kazakhstan." *Id.*

On this record, the Court finds that there is no significant likelihood of petitioner's removal in the reasonably foreseeable future. He cannot be removed to his home country, Kazakhstan, and although ICE has apparently actively attempted to obtain approval from Uzbekistan and Moldova to remove him to those third country, ICE's own polices apparently prevent it from removing petitioner to Uzbekistan unless he agrees to purchase his own ticket, and ICE has not been able to remove him to Moldova thus far. Petitioner maintains that he fears removal to Uzbekistan or Moldova because those countries have close ties to Kazakhstan and may send him back there, even though the immigration judge found that he would face persecution in Kazakhstan. As there is not a significant likelihood of petitioner's removal in the reasonably foreseeable future, petitioner's detention is no longer authorized by 8 U.S.C. § 1231.

**b. Third-Country Removal Claim**

Petitioner also request that the Court bar his removal to a third country. The Court construed petitioner's argument as raising a challenge to his removal to a third country without due process, pursuant to a July 9, 2025 ICE policy regarding third country removals.[1] The policy provides that "[i]f the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the

[1] To the extent petitioner seeks an order completely barring his removal to any third country, the Court declines to do so. 8 U.S.C. § 1231(b) authorizes removal to certain third countries, and petitioner has not shown that that statute is unlawful.

Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures." *See* ICE Policy Memorandum, *Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025)*, July 9, 2025, available at https://storage.courtlistener.com/recap/gov.uscourts.mad.282404/gov.uscourts.mad.282404.190.1.pdf. The policy further provides that, "[i]n all other cases," ICE may still remove the noncitizen to the third country by following certain procedures. *Id.* Those procedures include that "ERO [Enforcement and Removal Operations] will not affirmatively ask whether the alien is afraid of being removed to the country of removal." *Id.* (emphasis in original).

Respondents argue that the Court should deny petitioner's motion for temporary restraining order, to the extent it raises this claim, because they put petitioner on notice that ICE was attempting to remove him to Moldova when they filed their response in this case. *See* Doc. 13. They seem to argue that the claim is therefore moot. *See id.* But under the voluntary cessation exception to mootness, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022). The voluntary cessation exception is based on "the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Id.*; *see also Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (stating that the "'[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a *resumption* of the challenged conduct as soon as the case is dismissed'") (emphasis added). The voluntary cessation exception applies here because ICE could still try to remove petitioner to a third country other than Moldova pursuant to its current policy. Respondent cannot defeat petitioner's claim by only informing him of one third country to which they are attempting to remove him. Respondents do not otherwise address petitioner's claim. *See* Doc. 13.

"The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). The Ninth Circuit has held that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in

the United States and for withholding of deportation to the country to which they will be deported violates the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Nguyen v. Scott*, 796 F.Supp.3d 703, 727 (W.D. Wash. 2025) (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)). Other courts in this circuit have recognized that ICE's current policy is unconstitutional, and this Court agrees with the reasoning of those decisions. *See, e.g.*, *Nguyen v. Scott*, 796 F.Supp.3d at 726–33; *Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025).

## IV. Conclusion and Order

Accordingly,

1. The petition for writ of habeas corpus is GRANTED.
2. Respondents are ORDERED to release petitioner immediately.
3. Respondents are ENJOINED AND RESTRAINED from removing petitioner to any third country without first providing him with constitutionally compliant procedures, including:
   a. Written notice to petitioner and counsel of the third country to which he may be removed, in a language that petitioner can understand, provided at least 21 days before any such removal;
   b. A meaningful opportunity for petitioner to raise a fear of return for eligibility for protection under the Convention Against Torture, including a reasonable fear interview before a DHS officer;
   c. If petitioner demonstrates a reasonable fear during the interview, DHS must move to reopen his underlying removal proceedings so that he may apply for relief under the Convention Against Torture; and
   d. If it is found that petitioner does not demonstrate a reasonable fear during the interview, a meaningful opportunity, and a minimum of 15 days, for petitioner to seek to move to reopen his underlying removal proceedings to challenge potential

third-country removal.

4. Respondents are ORDERED to provide petitioner with a copy of this Order upon his release.
5. The Clerk of Court is directed to close this case and enter judgment for petitioner. The Clerk is directed to serve California City Detention Center with a copy of this Order.

IT IS SO ORDERED.

Dated: July 26, 2026

UNITED STATES DISTRICT JUDGE